# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Grzegorz Smuk,

      Plaintiff,

      v.

Specialty Foods Group, Inc.,

      Defendant.

Case No. 13-cv-8282

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

This case involves an employment dispute between Plaintiff Grzegorz Smuk ("Plaintiff" or "Smuk") and his former employer, Specialty Foods Group, Inc. ("Defendant" or "Specialty"). Plaintiff is a male who began working for the Defendant in May 2006. Plaintiff claims he was sexually harassed in the workplace and retaliated against for reporting and rejecting this harassment, and thus brings two causes of action: (1) hostile work environment under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); and (2) retaliation under Title VII.[1] On May 23, 2016, Defendant filed a motion for summary judgment as to these claims. Def.'s Mot. Summ. J. [57]. For the reasons explained below, that motion is granted in part and denied in part.

---

[1] Plaintiff originally brought two other causes of action under the Illinois Human Rights Act, 775 ILCS § 5/1-101, *et seq.* First Am. Compl. [30]. These claims (Counts I and II) were dismissed on March 2, 2015. Mem. Op. and Order [40]. Plaintiff's remaining claims under Title VII form Counts III and IV of his First Amended Complaint [30].

## I.  Background[2]

Defendant operated a food processing and packaging plant in Chicago, Illinois.  DSOF ¶ 4.  Defendant employed Plaintiff as a Maintenance Mechanic at its Chicago plant from May 2006 through March 2014.  *Id*. ¶ 19.  Plaintiff's job responsibilities included repairing and maintaining mechanical equipment and performing construction work.  *Id*. ¶ 22.

### a.  Plaintiff's Allegations of Sexual Harassment

Throughout Plaintiff's employment, Tomasz Miekisz ("Miekisz") served as Maintenance Supervisor at the Chicago plant.  *Id*. ¶ 21.  In this capacity, Miekisz managed and supervised all of the plant's Maintenance Mechanics, including Plaintiff.  *Id*.  Plaintiff alleges that Miekisz began sexually harassing him shortly after he started working for Defendant in May 2006, and continued to harass him until July 2012.  PSOAF ¶ 16.  Specifically, Plaintiff alleges that Miekisz grabbed Plaintiff's buttocks in August 2006, and then did so again a month later.  Plaintiff also complains that, beginning in September 2006, Miekisz's butt-grabbing occurred on a daily or regular basis.  PSOAF Attach. 1 ¶ 10.  Defendant admits that Miekisz "slapped" Plaintiff on the buttocks, but maintains that such contact was in a "sports nature and not a sexual nature," and occurred no more than ten times.  Def.'s Resp. to Pl.'s Rule 56.1 Statement [71] ¶ 14.

---

[2] The facts are taken from the parties' Local Rule 56.1 statements and accompanying attachments. "DSOF" refers to Defendant's Local Rule 56.1 Statement of Facts [59], with Plaintiff's responses where applicable [67].  "PSOAF" refers to Plaintiff's Local Rule 56.1 Statement of Additional Facts [67], with Defendant's responses where applicable [71].

Plaintiff further alleges that Miekisz grabbed "his crotch" on a "regular basis" from near the onset of his employment until July 2012. PSOAF ¶ 16. Additionally, Plaintiff claims that Miekisz regularly made inappropriate comments about Plaintiff's body, such as "you have a nice ass." PSOAF ¶¶ 16-17; PSOAF Attach. 1 ¶ 10. Plaintiff also alleges that Miekisz showed Plaintiff pornographic video clips at work, and, focusing on the male actor's penis, told Plaintiff, "[t]ake a look. Take a look how big does this guy have it. What do you think about that?" PSOAF ¶ 27. Defendant denies that any of these incidents occurred. Def.'s Resp. to Pl.'s Rule 56.1 Statement [71] ¶¶ 17, 19, 27. Finally, Plaintiff alleges that in June 2010, Miekisz made reference to "fucking" Plaintiff. PSOAF ¶ 15. Defendant admits that Miekisz made a joke which perhaps had a sexual connotation, but denies that Miekisz used these specific words. Def.'s Resp. to Pl.'s Rule 56.1 Statement [71] ¶ 15.

Plaintiff claims that he often attempted to either withdraw from or protest Miekisz's harassment, but that Miekisz yelled at him and/or retaliated against him by assigning him or his co-workers work. PSOAF ¶ 18. Plaintiff alleges that on one occasion, Miekisz said, "I am your boss and you can't do anything to me" and then ordered Plaintiff to clean the basement "as punishment." PSOAF Attach. 1 ¶ 10. Plaintiff also alleges that some of these encounters occurred in front of other employees, which embarrassed him. PSOAF ¶¶ 13, 31. Plaintiff alleges that his co-workers ridiculed him due to Miekisz's treatment. *Id.* Further, Plaintiff claims that when he protested Miekisz's grabbing of his buttocks, Miekisz "advised Smuk's

fellow maintenance mechanics that they could blame Smuk for additional work assignments." *Id.* ¶ 31; PSOAF Attach. 1 ¶ 10.

### b. Plaintiff's Verbal Complaint to Plant Superintendent Sowizral

Paul Sowizral ("Sowizral") served as Plant Superintendent of Defendant's Chicago plant. DSOF Attach. 4 at 8:19. Plaintiff alleges that, in May 2009, he complained about Miekisz's actions to Sowizral, who had an "open door" policy for his employees. PSOAF ¶ 6; Pl.'s Resp. to Def.'s Rule 56.1 Statement [67] ¶ 60. Specifically, Plaintiff alleges that he told Sowizral, "[Miekisz] is molesting me" and "inappropriately touching me." Pl.'s Resp. to Def.'s Rule 56.1 Statement [67] ¶ 60. Further, Plaintiff alleges that he told Sowizral that Plaintiff did not find the behavior funny and would not tolerate that kind of treatment. DSOF Attach. 2 at 31:8-13, 32:16-24. Defendant asserts that Plaintiff did not complain of *sexual* harassment to Sowizral, but instead only indicated that Miekisz was "picking on him" or harassing him. Def.'s Resp. to Pl.'s Rule 56.1 Statement [71] ¶ 7. Plaintiff alleges that Sowizral replied that "most likely [Miekisz] is trying to fuck you." Pl.'s Resp. to Def.'s Rule 56.1 Statement [67] ¶ 60. Plaintiff also alleges that, between 2008 and 2009, on more than one occasion and outside of work hours, he spoke with Sowizral about Miekisz "touching [him]" and "not leaving him alone." *Id.* ¶ 12. Defendant denies these other complaints occurred. Def.'s Resp. to Pl.'s Rule 56.1 Statement [71] ¶ 12.

Regardless, the Parties agree that Sowizral did not report any information concerning Plaintiff's allegations to human resources. PSOAF ¶ 5. Instead,

following Sowizral's conversation with Plaintiff, Sowizral spoke directly with Miekisz regarding Miekisz's actions. Def.'s Resp. to Pl.'s Rule 56.1 Statement [71] ¶ 7. Sowizral does not recall the details of the conversation, but does recall that he requested that Miekisz "treat everyone fairly." DSOF Attach. 4 at 50:16-17.

Plaintiff alleges that even after Sowizral spoke to Miekisz, Miekisz continued to sexually harass him until July 2012. PSOAF ¶ 19. For example, Plaintiff alleges that in 2011 Miekisz offered to show Plaintiff his testicles, and that Miekisz continued to grab his buttocks and crotch. PSOAF Attach. 1 ¶ 10.

### c. Plaintiff's Verbal Complaint to Human Resources Manager Pagan

On July 5, 2012, Plaintiff verbally complained to Maria Pagan ("Pagan"), Defendant's Human Resource Manager, that Miekisz had harassed him. DSOF ¶ 33. Specifically, Plaintiff alleged that Miekisz grabbed his buttocks and made statements such as "I will fuck your wife first, later you" and "I grabbed your wife, she has boobs like my daughter." *Id.* ¶ 37. Pagan immediately opened an investigation into Plaintiff's allegations. *Id.* ¶ 36.

As part of her investigation, Pagan determined that Plaintiff was the only employee that made such allegations against Miekisz. *Id.* ¶ 40. Pagan also confronted Miekisz in an in-person meeting on July 10, 2012. *Id.* ¶¶ 36, 38; PSOAF ¶ 11. During the meeting, Miekisz admitted that he had "slapped" Plaintiff's buttocks. DSOF ¶ 38.

As a result of Plaintiff's allegations and Pagan's subsequent investigation, Miekisz was suspended and required to attend anti-harassment training. *Id.* ¶¶ 39, 43. Afterwards, Miekisz's inappropriate conduct towards Plaintiff ceased. *Id.* ¶ 39.

### d. Plaintiff's Written Complaint to Human Resources Manager Pagan

Nonetheless, Plaintiff felt that his verbal complaint to Pagan failed to cause "any significant changes" and that Miekisz's suspension was inadequate punishment. DSOF Attach. 2 at 42:1. As a result, Plaintiff submitted a written complaint to Pagan on August 2, 2012 which detailed the prior sexual harassment allegations he made verbally on July 5, 2012. *Id.* ¶ 47; DSOF Attach. 2 at 45:16-20. This written complaint also included, amongst other allegations, the claim that Miekisz repeatedly grabbed Plaintiff's buttocks. PSOAF ¶ 10.

On August 9, 2012, Pagan met with Plaintiff to check-in and to "be sure Plaintiff was not complaining about any new incidents of harassment or retaliation." DSOF ¶ 48. At this meeting, Plaintiff did not allege any new harassment following Miekisz's suspension, but stated that prior to Miekisz's suspension, Miekisz "grabb[ed]" him in his "intimate location" and that the harassing behavior occurred "many times." PSOAF ¶ 9.

### e. Plaintiff's EEOC Complaint

On October 16, 2012, Plaintiff filed an administrative Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC").[3] DSOF ¶ 2.

### f. Plaintiff's Allegations of Retaliation

Plaintiff also alleges that, between 2006 and 2011, Miekisz retaliated against him for rebutting Miekisz's advances. DSOF ¶ 58. Specifically, the alleged instances of retaliation include Miekisz assigning Plaintiff to work in a cold area of the plant and threatening to fire Plaintiff. *Id.* Defendant disputes this allegation and states that Plaintiff's job responsibilities included working in these parts of the plant. Def.'s Resp. to Pl.'s Rule 56.1 Statement [71] ¶ 18. Additionally, Plaintiff alleges that he was denied a raise in 2012 for either rebutting Miekisz's verbal and physical sexual harassment or for reporting Miekisz's sexual harassment to Sowizral. PSOAF ¶ 32. Plaintiff claims that another maintenance mechanic reported receiving a raise during the same time period. *Id.* Plaintiff alleges that he was told by a co-worker that he was "denied a raise based on Miekisz's objections." *Id.* Defendant disputes that Plaintiff was denied a raise due to his rebutting or reporting the alleged harassment. DSOF ¶ 27.

---

[3] The parties disagree on the content of the administrative charge. Plaintiff alleges that the administrative charge included allegations of both hostile work environment harassment and retaliation, while Defendant alleges that the charge included only allegations of harassment. Pl.'s Resp. to Def.'s Rule 56.1 Statement [67] ¶ 2.

## II.    Legal Standard

Summary judgment is "designed to head off a trial if the opposing party 'does not have a reasonable prospect of prevailing before a reasonable jury—that is, a jury that will base its decision on facts and the law, rather than on sympathy or antipathy or private notions of justice.'" *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 338 (7th Cir. 1991) (quoting *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)).  Summary judgment is appropriate if the moving party can establish that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In making a summary judgment determination, the Court must "construe all facts and reasonable inferences in favor of the non-moving party."  *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 653 (7th Cir. 2010).

## III.    Analysis

### a.    Count III:  Sexual Harassment in the Form of Hostile Work Environment Under Title VII[4]

Title VII's prohibition against gender discrimination only encompasses sexual harassment that is sufficiently severe or pervasive so as to alter the employee's

---

[4] As an initial matter, Defendant argues that "Plaintiff lacks evidence of actual damages" to support his Title VII claim.  Defendant cites to *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003), arguing that, as a matter of law, Plaintiff's statements are not sufficient evidence of damages and that "he must explain the circumstances of his injury in reasonable detail."  Def.'s Mem. in Support of Mot. Summ. J. [75] 29.  The *Denius* case, however, does not apply if "the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action."  *Denius*, 330 F.3d at 929.  From Plaintiffs allegations, it could be reasonable to infer that a person would suffer such distress from the Defendant's actions.  *See United States v. Balistrieri*, 981 F.2d 916, 931-32 (7th Cir. 1992).  Plaintiff's statements regarding his harassment in front of co-workers, and his embarrassment and humiliation at co-workers' discussion of his treatment, solidify this inference.  PSOF ¶¶ 13, 31.

terms or conditions of employment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Bernier v. Morningstar, Inc.*, 495 F.3d 369, 373 (7th Cir. 2007). To prevail on a claim of sexual harassment based upon hostile work environment, a plaintiff must establish that: (1) he was subjected to unwelcome sexual harassment; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at him because of his sex; and (4) there is a basis for employer liability. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002). In evaluating a hostile work environment claim, the court should consider the "totality of the circumstances." *Meritor Savings Bank*, 477 U.S. at 65. In this case, Plaintiff presents allegations that create genuine issues of material fact as to each *prima facie* element, which will be discussed in turn.

### i. Unwelcome Sexual Harassment that Creates a Hostile Work Environment

Regarding the first element—unwelcome sexual harassment—taking as true Plaintiff's allegations, it is clear that he was subjected to unwelcome verbal and physical conduct of a sexual nature. Miekisz repeatedly grabbed Plaintiff on his buttocks and made sexual statements to Plaintiff despite his repeated protests. PSOAF ¶ 16. The more critical question, however, is whether Miekisz's behavior created a hostile work environment, as dictated by the second element.

In determining whether conduct is severe and pervasive enough to alter the conditions of employment and create a hostile work environment, courts consider both the actual effect of the conduct on the plaintiff (the subjective test) and what the effect would be on a reasonable person in the plaintiff's position (the objective

test). *Rodgers v. Western–Southern Life Ins. Co.,* 12 F.3d 668, 674 (7th Cir. 1993). If the victim "does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is not a Title VII violation." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806–07 (7th Cir. 2000) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22 (1993)). Likewise, conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. *Id.*

To satisfy the subjective test, it must be clear that the plaintiff actually perceived his work environment as hostile. *Id.* Here, Plaintiff alleges that remarks about his body and conduct such as grabbing his buttocks and crotch were a pervasive aspect of his employment that persisted throughout his tenure at Specialty. PSOAF ¶ 16. Although Plaintiff waited for a period of time before verbally complaining to Plant Superintendent Sowizral, when Plaintiff did complain, he described Miekisz's behavior as "inappropriate" and "molesting." Pl.'s Resp. to Def.'s Rule 56.1 Statement [67] ¶ 60. Further, Plaintiff alleges he objected to Miekisz's behavior as it occurred. PSOAF ¶ 18. Finally, Plaintiff states that the frequent, sometimes daily, actions by Miekisz humiliated him and embarrassed him. PSOAF ¶¶ 13, 31. Thus, Plaintiff's allegations adequately suggest that he subjectively believed that he was subject to a hostile work environment. *See Frey v. Coleman*, 141 F. Supp. 3d 873, 880 (N.D. Ill. 2015) (finding that plaintiff subjectively believed he was subject to a hostile work environment where he

expressed that comments made to him were inappropriate and complained to management).

When analyzing the objective severity of harassment, courts take the perspective of a reasonable person in the plaintiff's position, considering all the relevant circumstances. *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81 (1998). These circumstances include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Equal Employment Opportunity Commission v. Mgmt. Hospitality of Racine, Inc.,* 666 F.3d 422, 432 (7th Cir. 2012). In some cases, it "can be difficult to determine when sexual harassment is actionable . . . On [the actionable] side lie sexual assaults; other physical contact . . . uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; [and] pornographic pictures. On the other [unactionable] side lies the occasional vulgar banter, tinged with sexual innuendo." *Baskerville v. Culligan Intern. Co.,* 50 F.3d 428, 430 (7th Cir. 1995) (internal quotation marks and citations omitted). Typically, "it is a combination of severity and frequency that reaches the level of actionable harassment." *Patton v. Keystone RV Co.,* 455 F.3d 812, 815 (7th Cir. 2006).

Plaintiff's claims satisfy the objective test. The conduct alleged in this case occurred over the course of eight years, and for approximately five years after Plaintiff first complained to Sowizral. Construing all facts and reasonable

inferences in the light most favorable to Plaintiff, the alleged conduct consists of: (1) frequent, sometimes daily physical contact in the form of grabbing Plaintiff's buttocks and crotch; (2) frequent, sometimes daily comments about Plaintiff's body; (3) sexually charged comments such as making reference to "fucking" Plaintiff; and (4) showing Plaintiff pornographic materials. PSOAF ¶¶ 15-17, 27. As the Seventh Circuit has stated:

> When entering a workplace, reasonable people expect to have their autonomy circumscribed in a number of ways; but giving up control over who can touch their body is usually not one of them. With that being said, it is certainly true that "[p]hysical harassment lies along a continuum just as verbal harassment does." The mere existence of physical contact does not create a hostile environment . . . But when the physical contact surpasses what "(if it were consensual) might be expected between friendly coworkers . . . it becomes increasingly difficult to write the conduct off as a pedestrian annoyance."

*Patton,* 455 F.3d at 816 (quoting *Hostetler,* 218 F.3d at 808). While Miekisz's grabbing of Plaintiff's crotch and buttocks is not as severely intrusive as the physical contact in *Patton* (where the alleged harasser grabbed the plaintiff's intimate areas beneath her clothing), it still surpasses the type of contact expected between "friendly coworkers." *Id.* Moreover, Miekisz's alleged behavior occurred almost daily despite Plaintiff's protests. Harassment "need not be severe *and* pervasive to impose liability; one or the other will do." *Hostetler,* 218 F.3d at 808. Conduct "that is not particularly severe but that is an incessant part of the workplace environment may, in the end, be pervasive enough and corrosive enough that it meets the standard for liability." *Jackson v. Cnty. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007). Courts have found conduct of similar severity and frequency as

that alleged here sufficient to meet the second element of a hostile environment claim. *See e.g., Benitez v. American Standard Circuits, Inc.*, 678 F.Supp.2d 745, 766 (N.D. Ill. 2010) (summary judgment denied where male plaintiff alleged male harasser grabbed his crotch area on two occasions, but also attempted to grope him two or three times a week over the course of his eight years of employment).

The cases cited by Defendant, in which the court found "horseplay" but not a hostile work environment, are distinguishable. Unlike the present case, where Miekisz's conduct was frequent, the plaintiff in *Stewart v. General Motors Corp.* only complained of isolated incidents. No. 99C0628, 2001 WL 710106, *8 (N.D. Ill. June 22, 2001). Similarly, in *Shafer v. Kal Kan Foods,* the plaintiff's allegations involved five isolated incidents, not persistent harassment. 417 F.3d 663, 666 (7th Cir. 2005). Further, the *Shafer* court rested their analysis on the fact that the aggressor harassed both men and women, and thus did not select the plaintiff on account of his gender. The present case lacks such evidence that Miekisz behaved similarly toward women. *Id.* Miekisz's isolated comments about Plaintiff's wife were made to *Plaintiff* when his wife was not physically present. DSOF ¶ 37. Thus, these comments more closely resemble another means of harassing Plaintiff than harassment of females.

### ii. Gender Based Conduct

The third element—that the conduct was "based on" or occurred "because of [the plaintiff's] sex"—has been squarely addressed by the Supreme Court in the context of same-sex sexual harassment. *Oncale v. Sundowner Offshore Servs., Inc.,*

523 U.S. 75 (1998). To support a same-sex sexual harassment claim, the plaintiff must prove that the conduct at issue was "not merely tinged with offensive sexual connotations," but actually constituted discrimination because of sex. *Id*. at 81. The two most common manifestations of sex-discriminatory motivation are: (1) sexual interest; and (2) sexually disparate treatment. *Id*. at 80. Here, Plaintiff relies on a theory of sexual interest. The "inference that the sexual overlay was not incidental . . . cannot be reduced to rigid formulae." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). There is "no singular means of establishing the discriminatory aspect of sexual harassment. So long as the plaintiff demonstrates in some manner that he would not have been treated in the same way had he been a woman, he has proven sex discrimination." *Id*.

There is sufficient evidence suggesting that Miekisz's harassment of Plaintiff was due to sexual interest. The alleged harassment began with Miekisz making comments about Plaintiff's body such as "you have a nice ass." PSOAF ¶¶ 16-17; PSOAF Attach. 1 ¶ 10. Further, Plaintiff alleges that Miekisz made reference to "fucking" Plaintiff. PSOAF ¶ 15. Defendant admits that Miekisz made a comment with a sexual connotation. Def.'s Resp. to Pl.'s Rule 56.1 Statement [71] ¶ 15. Additionally, Plaintiff alleges that Miekisz grabbed Plaintiff's crotch and buttocks throughout his employment. PSOAF ¶ 16. Plaintiff also claims that Miekisz showed Plaintiff pornographic video clips at work, and, focusing on the male actor's penis, told Plaintiff, "[t]ake a look. Take a look how big does this guy have it. What do you think about that?" *Id*. ¶ 27. Finally, when Plaintiff complained to Sowizral,

Sowizral responded that Miekisz was "trying to fuck" Plaintiff.  Pl.'s Resp. to Def. Rule 56.1 Statement ¶ 60.  Based upon these incidents, a reasonable jury could infer that Miekisz harassed Plaintiff because of his gender.

The allegations in the present case are similar to those in *Shepherd*, where the Seventh Circuit reversed and remanded the trial court's grant of summary judgment against the plaintiff's hostile work environment claim.  168 F.3d at 1009. In that case, the harasser similarly commented on the plaintiff's body and appearance, calling him a "handsome young man."  The harasser also made comments of a sexual nature toward the plaintiff, telling him that he would "fuck [him] in the ass."  *Id.*  The Seventh Circuit held that such evidence created a reasonable inference that the harassing actions were due to the plaintiff's gender. *Id.* at 1010.  The court stated:

> What to make of [the harasser's behavior (assuming that it occurred as [the plaintiff] described it) is a task that requires one to weigh the tone and nuances of his words and deeds and a host of other intangibles that the page of a deposition or an affidavit simply do not reveal.  This is a task for the factfinder after trial, not for the court on summary judgment.

*Id.*  The same reasoning applies here.

Defendant argues that Miekisz's behavior, while lewd and inappropriate, was merely "horseplay," not evidence of sexual interest.  Defendant cites the Seventh Circuit's opinion in *Johnson v. Hondo*, which states that while vulgar language and sexually explicit content

> may often take a factfinder a long way toward concluding harassing comments were in fact based on gender . . . this need not necessarily be the case.  Most unfortunately, expressions such as "fuck me," "kiss my

ass," and "suck my dick," are commonplace in certain circles, and more often than not, when these expressions are used (particularly when uttered by men speaking to other men) their use has no connection whatsoever with the sexual acts to which they make reference—even when they are accompanied, as they sometimes were here, with a crotch-grabbing gesture. Ordinarily, they are simply expressions of animosity or juvenile provocation.

125 F.3d 408, 412 (7th Cir. 1997). However, in *Johnson*, the only evidence before the Court was the alleged harassers' sexually graphic statements. *Id.* at 410. The alleged harasser never physically touched the plaintiff. *Id.* at 411. Thus, this case is distinguishable, as Miekisz repeatedly made statements about Plaintiff's body *and* regularly grabbed Plaintiff's buttocks and crotch. *See Robinson v. Roney Oatman*, No. 97C8964, 1999 WL 1102694, *6 (N.D. Ill. Nov. 23, 1999) (distinguishing *Johnson* and denying summary judgment where the harasser physically touched plaintiff's testicles); *Bacon v. Art Institute of Chicago,* 6 F.Supp.2d 762 (N.D. Ill. 1998) (denying summary judgment where manager grabbed plaintiff's buttocks and simulated sex).

The fact that Miekisz told Plaintiff, "I will fuck your wife first, later you" and "I grabbed your wife, she has boobs like my daughter," does not alter this conclusion. DSOF ¶ 37. Citing *Holman v. State of Indiana*, 211 F.3d 399, 404 (7th Cir. 2000), Defendant argues that an individual who engages in harassing conduct towards males and females alike does not meet the gender requirement and merely constitutes an "equal opportunity harasser." Def.'s Mot. Summ. J. [75] 13. *Holman* is inapposite here. In *Holman,* a husband and wife both brought separate claims of sexual harassment against the same person. In the present case, there is no

evidence that Miekisz directly harassed any women or Smuk's wife in particular. Instead, Miekisz made comments *to* Plaintiff *about* his wife. Such comments are largely irrelevant to Defendant's "equal opportunity harasser" theory. What matters "is whether [the alleged harasser] in fact *did* sexually harass members of both genders." *Shepherd*, 168 F.3d at 1011 (emphasis in original). In sum, as the record stands, a reasonable finder of fact could permissibly conclude that Miekisz sexually harassed Plaintiff because he is a male.

### iii. Employer Liability

An employer will be held strictly liable for the alleged sex discrimination of a supervisor if there was a tangible employment action such as a discharge, demotion, or a change in working conditions. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir.2004). While Defendant does not contest that Miekisz acted as Plaintiff's direct supervisor, DSOF ¶ 21, there is no evidence that Defendant took any tangible employment action against Plaintiff during his employment. Without a tangible employment action, Defendant may establish an affirmative employer liability defense consisting of two necessary elements: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

Contesting the second prong of this affirmative defense, Plaintiff argues that his alleged complaint of sexual harassment to Sowizral, the Plant Superintendent,

was sufficient to establish that he reasonably took advantage of the corrective opportunities provided by Defendant. PSOAF ¶¶ 3-4. The parties debate whether reporting sexual harassment to Sowizral technically followed Defendant's sexual harassment policy. PSOAF ¶¶ 3-4. Defendant's written policy states that an employee ought to report to: (1) his immediate supervisor; (2) the location human resources manager; (3) the General Manager; or (4) the Corporate Vice President of Human Resources. DSOF Attach. 5 at 19. The policy does not list Plant Superintendent (Sowizral's position) as a permissible recipient of a sexual harassment complaint. *Id*.

Nevertheless, a determination of this factual issue is not necessary, even if, as the Defendant argues, Plaintiff did not follow Defendant's formal complaint procedure. Here, Plaintiff's complaint to Sowizral was sufficiently reasonable to defeat Defendant's affirmative defense and demonstrate a genuine issue of material fact as to employer liability. In *Ellerth*, the Supreme Court made clear that compliance with an employer's designated complaint procedure is not the *sole* means by which an employee can reasonably defeat the defense's second prong. 524 U.S. at 745. Rather, under the Court's established "functional approach," an employer must prove that "the plaintiff employee unreasonably failed to take advantage of *any* preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. (emphasis added). To this end, the Seventh Circuit acknowledged in *Durkin v. City of Chicago* that "there could be instances" where a plaintiff's informal verbal complaints which do not follow an employer's harassment

policy are "sufficient to put an employer on notice." 341 F.3d 606, 613 (7th Cir. 2003).

Following *Durkin*, in *Phelan v. Cook County*, the plaintiff verbally reported to human resources on multiple occasions that she had been "subjected to gender related verbal abuse" and "placed in a headlock," by her male superiors, at times in the presence of co-workers. 463 F.3d 773, 786 (7th Cir. 2006). However, the plaintiff's verbal report was not sufficient to constitute a formal complaint under the defendant's sexual harassment policy. *Id.* Nevertheless, the Seventh Circuit found that such informal verbal complaints sufficiently put the defendant on notice of the plaintiff's allegations of sexual harassment. According to the court, the plaintiff's "situation is precisely the instance we alluded to in Durkin, where complaints that do not technically comply with the company's internal procedure are nonetheless sufficient." *Id.*

Construing all facts and reasonable inferences in the light most favorable to Plaintiff, Plaintiff's verbal complaint to Sowizral that Miekisz "is molesting me" and "inappropriately touching me" reasonably put the Defendant on notice that Plaintiff was alleging sexual harassment. Pl.'s Resp. to Def.'s Rule 56.1 Statement [67] ¶ 60. Plaintiff's testimony that Sowizral's responded to his verbal complaint with the comment "most likely [Miekisz] is trying to fuck you," presents further evidence that the sexual nature of Plaintiff's complaint was clear to Sowizral. Pl.'s Resp. to Def.'s Rule 56.1 Statement [67] ¶ 60. Further, as in *Phelan,* Plaintiff alleges that he

complained to Sowizral about the harassment more than once, and that the harassment took place in front of other employees.

Other courts have found reasonable notice in similar circumstances. *Bridges v. Metropolitan Water Reclamation Dist. of Greater Chicago* is particularly instructive. No. 02C9354, 2005 WL 241469, *5 (N.D. Ill. Jan. 20, 2005). In *Bridges,* the plaintiff had never previously utilized her employer's established discrimination procedure when she verbally complained to management about her supervisor's racial insults. *Id.* at *9. The verbal complaint did not constitute a formal complaint under the defendant's anti-harassment policy reporting procedure. *Id.* Management delayed communicating her reports to human resources, despite a policy that required management to report race discrimination charges. *Id.* On one occasion, management spoke directly with the supervisor, but the harassing behavior continued. *Id.* at *8. The court found that the employer could not establish either prong of the *Ellerth* defense due to the plaintiff's informal but sufficient complaints and the defendant's subsequent inaction. *Id.* at *9.

Here, as in *Bridges*, Plaintiff alleges that he spoke with Sowizral about Miekisz's behavior on more than one occasion. PSOAF ¶ 12. Also like in *Bridges*, despite the fact that Defendant's equal employment opportunity policy obligated management to "immediately report complaints of harassment," Sowizral approached Miekisz directly but did not report the Miekisz's harassment to human resources. DSOF Attach. 5 at 19; Def.'s Resp. to Pl.'s Rule 56.1 Statement [71] ¶ 7; PSOAF ¶ 5. Miekisz's behavior did not improve following his discussion with

Sowizral; he continued to regularly grab Plaintiff's buttocks and crotch and make comments about his body. PSOAF ¶ 19. Therefore, as in *Bridges*, Defendant cannot establish either prong of its *Ellerth* defense.[5]

### b. Count IV: Retaliation Under Title VII.[6]

Employers "are prohibited from punishing employees for complaining" about "practices that violate Title VII." *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003).

### i. Timeliness of Plaintiff's Allegations

Defendant first argues that Plaintiff's retaliation claim is time barred. An individual "wishing to challenge an employment practice [such as retaliation] under [Title VII] must first file a charge with the EEOC. Such a charge must be filed within a specified period . . . after the alleged unlawful employment practice occurred, and if the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 623–24 (2007) (internal quotation marks and citations omitted), *superseded by statute with respect to compensation practices,* Pub.L. No. 111–2, 123 Stat. 5 (Jan. 29, 2009); *see also Hill v. Potter,* 352 F.3d 1142, 1145 (7th Cir. 2003); 42

---

[5] Defendant also cites to *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 549-50 (7th Cir. 2011), arguing that the reasonableness of Plaintiff's approach in reporting to Sowizral evaporated when his complaint went unanswered. However, *Yancick* is distinguishable, as in that case the supervisor to whom the plaintiff reported did not act *in any way. Id.* at 538. In the present case, Sowizral at least attempted to discuss the allegations with Miekisz in order to make the behavior stop. Def.'s Resp. to Pl.'s Rule 56.1 Statement [71] ¶ 7. Further, unlike the person to whom the plaintiff reported in *Yancick,* Sowizral, as a member of management, arguably had authority to address Plaintiff's complaints, or at least had a duty to refer the complaints to others who did. PSOAF ¶ 19.

[6] As an initial matter, Defendant argues that Plaintiff's EEOC complaint did not set forth allegations of retaliation, and therefore Plaintiff has not exhausted his administrative remedies. Def.'s Mem. in Support of Mot. Summ. J. [75] 18-19. However, this Court previously rejected this argument at the motion to dismiss phase. Mem. Op. and Order on Mot. to Dismiss [25] 4.

U.S.C. § 2000e–5(f)(1). In Illinois, "the charging period is 300 days." *Groesch v. City of Springfield,* 635 F.3d 1020, 1024 n.2 (7th Cir. 2011). The 300–day limitation period begins "when the alleged unlawful employment practice occurred." *Adams v. City of Indianapolis,* 742 F.3d 720, 730 (7th Cir. 2014) (internal quotation marks omitted) (citing 42 U.S.C. § 2000e–5(e)(1)). Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice" within the meaning of the charge filing requirement of Title VII.[7] *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 114 (2002).

Thus, all of Plaintiff's allegations of retaliation that occurred more than 300 days prior to Plaintiff's filing of his EEOC complaint on October 16, 2012 are untimely.[8] These allegations include Miekisz assigning Plaintiff work in the boiler room (Fall 2006); Miekisz ordering Plaintiff's co-workers to clean (September 2007); Miekisz assigning Plaintiff to work on the third floor until break time (April 2008); and Miekisz threatening to fire Plaintiff (May 2009).

Plaintiff's remaining allegation that he was denied a pay raise in 2012 is not time-barred, as it did not occur more than 300 days prior to the filling of Plaintiff's EEOC complaint. Timely retaliation claims "may be established by either the direct

---

[7] The continuing violation doctrine allows a plaintiff to obtain relief from certain time barred acts of discrimination by linking them with acts which fall within the limitations period. *Gurzynski v. Area 604/605 Local 6266*, No. 98C2971, 1999 WL 728096, *3 (N.D. Ill. Sept. 14, 1999). However, the continuing violation theory does not apply to discrete acts. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992). Plaintiff's allegations of retaliation, such as threatening termination, constitute discrete acts, and therefore the continuing violation doctrine does not apply.

[8] That some of the Plaintiff's retaliation claims are untimely does not speak to Plaintiff's hostile work place environment claims. A hostile-work-environment charge is timely as long as *any* act falls within the statutory time period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

or indirect methods of proof." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). Here, Plaintiff fails to meet the standards of either method.

### ii. Direct Method

To establish retaliation under the direct method, the plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) Defendant took an adverse employment action against him; and (3) there was a causal connection between his protected activity and the adverse employment action. *Id.* at 859.

Regarding the second element, Plaintiff's allegations indicate that he suffered an adverse employment action. The term "adverse employment action" has been "defined quite broadly in this Circuit." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996); *Oest v. Illinois Dep't. of Corrections*, 240 F.3d 605, 612 (7th Cir. 2001). The Seventh Circuit has recognized that "creating a precise list of activities that constitute adverse employment actions would be impossible because of the unique circumstances of individual cases," but it has noted some examples: "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities." *Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 465–66 (7th Cir. 2002) (quoting *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir. 1999). The Seventh Circuit has also held that denial of a raise is an adverse employment action. *Farrell v. Butler University*, 421 F.3d 609 (7th Cir. 2005); *Hunt v. City of Markham*, 219 F.3d 649, 654 (7th Cir. 2000); *cf. Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) (denial of discretionary bonus not sufficient).

Here, Plaintiff alleges that he was "denied a raise" due to his reporting to Sowizral. PSOAF ¶ 32.

Regarding the first element, Defendant argues that Plaintiff fails to show any protected activity because "Plaintiff's report to Sowizral was not in accordance with [Specialty's] Anti-Harassment policy." Def.'s Reply [70] 22. However, "an informal complaint may constitute protected activity for purposes of retaliation claims." *Casna v. City of Loves Park,* 574 F.3d 420, 427 (7th Cir. 2009).

Alternatively, Defendant claims that the *generality,* if not informality, of Plaintiff's complaint is problematic. In *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 663 (7th Cir. 2006), the Seventh Circuit recognized that general complaints of discrimination or harassment are insufficient to constitute protected activity when those complaints do not indicate "a connection to a protected class"— here, gender—or provide "facts sufficient to create that inference." *Id.* Plaintiff labeled Miekisz's behavior to Sowizral as "molesting," and alleges that Sowizral replied that "most likely [Miekisz] is trying to fuck you." Pl.'s Resp. to Def.'s Rule 56.1 Statement [67] ¶ 60. Given this context, Defendant challenges whether Plaintiff sufficiently reported harassment because of his gender. *See Alford v. Kendall County Dept. of Heath,* No. 07C4528, 2008 WL 5093835, *9 (N.D. Ill. Nov. 24, 2008) (plaintiff's complaints of "harassment" and "discrimination" to supervisor not found to be protected activity because they lacked a specific link to plaintiff's gender).

One might reasonably interpret Plaintiff's comment that Miekisz was

"molesting" Plaintiff and Sowizral's response that Miekisz was trying to "fuck" Plaintiff as sufficient to support a connection to a protected class. *See Nichols v. Illinois Dept. of Transp.,* No. 12C1789, 2016 WL 212917, *24 (N.D. Ill. Jan 19, 2016) (finding that plaintiff engaged in protected activity, despite never explicitly stating a connection between his differential treatment and his religion, because supervisor's surrounding statements afforded inference of the connection); *Lerman v. Turner*, No. 10CV2169, 2013 WL 4495245, *15 (N.D. Ill. Aug. 21, 2013) (finding reasonable inference that alleged discrimination was based on anti-Arab sentiment where attention was drawn to fact that plaintiff was Palestinian). It "is not necessary that the plaintiff utter . . . magic words in opposing an employer's discriminatory conduct, if the context of the plaintiff's complaints allows a reasonable inference that it is." *Nichols,* 2016 WL 212917 at *23 (quoting *Weintaub v. Mental Health Auth. Of St. Mary's, Inc.*, No. DKC082669, 2010 WL 4868095, *6 (D.Md. Nov. 23, 2010).

The Court need not decide this issue, however, because Plaintiff fails to satisfy the third element of a *prima facie* case. To satisfy the causation requirement, the "protected activity of an employee making a retaliation claim must have been 'a but-for cause of the alleged adverse action by the employer.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)). The requirement of but-for causation in retaliation claims "does not mean that the protected activity must have been the *only* cause of the adverse action. Rather, it means that the adverse action

would not have happened without the activity." *Id.* (emphasis added). The plaintiff may rely on either direct or circumstantial evidence to show that Defendant's adverse action was motivated by his protected activity. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 307 (7th Cir. 2012). Because direct evidence "'essentially requires an admission by the employer,' such evidence 'is rare.'" *Id.* (quoting *Benders v. Bellows & Bellows*, 515 F.3d 757, 764 (7th Cir. 2008)). Plaintiff has not produced any direct evidence of a causal link between his complaints and his denial of a raise.

Plaintiff, however, may still satisfy the direct method "using what this Circuit has termed a 'convincing mosaic' of circumstantial evidence." *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013) (quoting *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)) (internal quotations omitted). In the retaliation context, "circumstantial evidence of retaliation may include 'suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn.'" *Id.* (quoting *Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 792 (7th Cir. 2007)). These "categories of evidence are not exclusive, nor are they a set of prongs of a circumstantial evidence 'test.'" *Id.* Ultimately, Plaintiff must present "a convincing mosaic of circumstantial evidence that would permit the same inference without the employer's admission." *Coleman*, 667 F.3d at 860 (internal quotations omitted). In other words, Plaintiff "must present admissible evidence that, when taken as a whole and viewed in a

light favorable to [Plaintiff's] case, could convince a reasonable jury that he was the victim of unlawful retaliation." *Hobgood*, 731 F.3d at 643. Here, Plaintiff offers evidence of suspicious timing and ambiguous statements by Miekisz. Neither category of evidence averts summary judgment in this case.

A temporal connection beyond a few months generally fails to establish a causal connection between a protected activity and an adverse action. *See, e.g., Longstreet v. Ill. Dep't. of Corr.,* 276 F.3d 379, 384 (7th Cir. 2002) (four-month proximity insufficient to establish a causal connection); *Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 919 (7th Cir. 2000) (three-month gap alone insufficient). Here, Plaintiff's complaint to Sowizral occurred in July 2009. He alleges he was denied a raise in 2012. Given the facts presented, this three-year time gap is too long to raise suspicion of a retaliatory motive.

Regarding ambiguous statements, Plaintiff claims that a co-worker told him that he did not receive a raise in 2012 because Miekisz "prohibited [it] from happening." DSOF Attach. 1 at 80:1-5. Plaintiff's proffered hearsay statement from one of his co-workers, however, fails to withstand summary judgment. Fed. R. Civ. P. 56(c)(2); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997); *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

Plaintiff also alleges that in May 2009, Miekisz threatened to fire Plaintiff if he continued to complain. DSOF ¶ 58. However, "ambiguous or isolated comments that stand alone are insufficient." *Hobgood*, 731 F.3d at 644. The ultimate question the parties and the court always must answer is whether it is "more likely than not

that the plaintiff was subjected to the adverse employment action because of [his] protected status or activity." *Id.* To answer that question, the "individual 'bits and pieces' presented by the plaintiff must be put into context and considered as a whole." *Id.* Sometimes cases are presented "in which a plaintiff does not have a convincing mosaic, but only one 'bit' or 'piece.'" *Id.* These cases recognize that "a reasonable jury could not infer that a plaintiff was a victim of illegal discrimination or retaliation based on one isolated 'bit' or 'piece.'" *Id.* After dismissing the timing of the denial of Plaintiff's raise and disregarding Plaintiff's hearsay evidence, one threatening statement made three years before the alleged adverse employment action is insufficient to support a finding that Plaintiff did not receive a raise in 2012 because of his complaint to Sowizral.

### iii. Indirect Method

Under the indirect method, the plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite his satisfactory job performance, he suffered an adverse action from the employer; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). If the plaintiff establishes these elements, the burden shifts to the defendant to come forward with a legitimate, non-invidious reason for its adverse action. *Id.* Although the burden of production "shifts to the defendant under this method, 'the burden of persuasion rests at all times on the plaintiff.'" *Id.* (quoting *Haywood v. Lucent Techs., Inc.*, 323

F.3d 524, 531 (7th Cir. 2003)).  Once the defendant "presents a legitimate, non-invidious reason for the adverse action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual." *Id.*

Defendant argues that Plaintiff cannot establish a *prima facie* retaliation case under the indirect method.  Def.'s Mot. Summ. J. [75] 1.  The Court agrees. Even assuming that Plaintiff engaged in a statutorily protected activity, performed his job satisfactorily, and suffered an adverse employment action, Plaintiff fails to provide specific evidence that he was treated less favorably than similarly situated employees who did not complain of sexual harassment.

Plaintiff testified at his deposition that another maintenance mechanic, Mateusz Rachwalski ("Rachwalski"), told Plaintiff that Rachwalski received a pay raise in 2012.  Pl.'s Resp. to Def.'s Rule 56.1 Statement [67] ¶ 27.  As discussed above, this statement constitutes hearsay and may not be considered.  As such, Plaintiff offers no proof that other maintenance mechanics were given a raise, and thus cannot show that he was treated less favorably than others.

Moreover, even if Plaintiff's proffered evidence were admissible, he offers no evidence that Rachwalski was similarly situated.  To be similarly situated, the court considers whether the employees:  (1) held the same job description; (2) were subject to the same standards; (3) were subordinate to the same supervisor; and (4) had comparable experience, education and other qualifications.  *Bagwe v. Sedgwick Claims Management Services, Inc.*, 811 F.3d 866, 884 (7th Cir. 2016).  Even assuming that Plaintiff and Rachwalski both held to the same job as Maintenance

Mechanics and were subordinate to Miekisz, Plaintiff offers no evidence regarding their comparative experience, education, or other qualifications that would support a finding that they were similarly situated. Thus, Plaintiff's retaliation claim cannot survive summary judgment under either the direct or indirect method.

## IV.     Conclusion

In light of the foregoing, Defendant's Motion for Summary Judgment [57] is granted as to Count IV and denied as to Count III.


IT IS SO ORDERED

Dated:  July 13, 2016                              Entered:


_____
John Robert Blakey
United States District Judge